**The New York Times Company**

David McCraw
Vice President and
Assistant General Counsel

620 8th Avenue
New York, NY  10018

tel 212.556-4031
fax 212.556-4634
mccraw@nytimes.com

November 12, 2015

**BY ELECTRONIC DELIVERY**

The Honorable Raymond J. Dearie
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Gigliotti, et al.*, 15-cr-204 (RJD) – Request to Unseal Docket No. 103

Dear Judge Dearie:

I am counsel for non-party The New York Times Company ("The Times"), and I write to request the unsealing of a letter filed by the Government on November 6, 2015 (the "Letter," Docket No. 103) in response to this Court's Order of October 7, 2015. The Order required from the Government an accounting of the Government's use of impermissible language in grand jury subpoenas.

The Letter, submitted in direct response to a court order that was precipitated by possible misconduct, is of obvious public interest. More significantly, under Second Circuit precedent it is a judicial document subject to the common-law and First Amendment rights of access. We also note that, despite the strict legal requirements for sealing documents, the Government's letter was unaccompanied by a motion to seal, and the Government has articulated no basis to justify sealing. In fact, there is no basis for the sealing, as set forth below.

### I.   The Letter is a Judicial Document Subject to the Public's Qualified Right of Access under the Common Law

Public access to the documents that influence judicial decision-making is an indispensable feature of American democracy. "The notion that the public should have access to the

59307

proceedings and documents of courts is integral to our system of government. To ensure that ours is indeed a government of the people, by the people, and for the people, it is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives and their representative institutions." *United States v. Erie Cnty.*, 763 F.3d 235, 238-9 (2d Cir. 2014).

Courts have long held that public access to courts and documents submitted therein is protected by the common law, a fundamental right that "predate[s] the constitution," and creates a "presumption favoring access" to judicial documents. *United States v. Amodeo*, 44 F.3d 141, 145, 146 (2d Cir. 1995) ("*Amodeo I*"). As set forth in *Erie*, the common-right law is a qualified right based on a three-step analysis in which the court determines (1) whether a document is a "judicial document"; (2) if it is, how strong the presumption of access is; and (3) whether countervailing concerns overcome the presumption and justify continued sealing. *Erie*, 763 F.3d at 239.

**The letter is a judicial document.** A document qualifies as a "judicial document" if it is "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145. The Letter, produced in direct response to a judicial order related to possible governmental impropriety, fully qualifies. In *Amoedo I*, for example, the court considered the status of a report prepared by a special master to monitor a consent decree in a RICO action. The Second Circuit "d[id] not hesitate" to classify that report as a "judicial document," despite the fact that the report was not the primary subject of the action at hand. *Id.* at 146. Similarly, the court in *Erie* held that compliance reports measuring the progress of county correctional facilities in improving conditions prepared following settlement of the case were judicial documents, even where those documents were not part of any ongoing dispute. *Erie*, 763 F.3d at 241. Indeed, the mere fact that the district court could use the reports in a *sua sponte* action to reinstate civil proceedings was enough to merit their classification as judicial documents. *Id.* "In light of the District Court's inherent 'supervisory power over its own records and files,' even the District Court's inaction is subject to public accountability. The public's ability to scrutinize such judicial decision-making helps assure its confidence in the orderly administration of justice." *Id.* at 240 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

The Letter is similarly situated. The court is exercising its inherent supervisory powers over critical components of the criminal justice process, and the Government's response to this Court's order is critical for the public's understanding of whatever step the Court takes next – or the decision by the Court to take no further action. The response also sheds light on the propriety of the Government's use of its own prosecutorial power, a subject of significant public concern under the circumstances presented , where the Government has been interfering with witnesses' right to speak to other members of the public about subpoenas received.

**The presumption of public access is strong.** Once a document is determined to be a judicial document, the court must then assess the weight of the presumption of access that attaches. *Id.* at 241. "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044,

2

1049 (2d Cir. 1995) ("*Amodeo II*"). The presumption is at its weakest when the documents are discovery materials put before the court for no purpose other than to illustrate how discovery had proceeded. *Id.* at 1050. At the other end of the spectrum, when the documents are part of a dispositive motion, the presumption is at its zenith. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 123 (2d Cir. 2006). As noted above, the Letter was the pure product of this Court's inherent Article III judicial power, and, as such, is entitled to a strong presumption of access. It relates significantly to the exercise of prosecutorial and judicial power. This is not an irrelevant, tangential document, but rather a response to a court order seeking answers about misconduct present in this case and affecting the fair trial rights of current defendants.

**No countervailing interest overcomes the presumption of access.** As a final analytical step, a court must "balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. It is hard to posit what countervailing factors might counsel in favor of sealing. As the Court noted in its Order, objections to the language used by the Government in its grand jury subpoenas are "understandable." The public's interest in understanding the extent to which that language has affected countless other such subpoenas – language that may unfairly restrict the rights of recipients to speak about the exercise of prosecutorial power – is plain. The Government's Letter might be the only opportunity the public has to scrutinize the Government's policies.

None of the usual concerns that might weigh in favor of sealing are present. The Letter is unlikely to contain any information about identifiable pending investigations or prosecutorial strategy. No privacy interest would appear to be implicated. No fair trial rights would be prejudiced. To the extent that any countervailing interest may exist somewhere in the document, redaction is adequate to address such concerns.

## II.    The First Amendment Right of Access Also Applies

Because access is required as a matter of common law, the constitutional question need not be reached by the Court. However, were the issue to be reached, the First Amendment right of access requires unsealing as well.

The qualified First Amendment right applies to an array of judicial documents. *Lugosch*, 435 F.3d at 119-20; *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), *cert. denied sub nom., Esposito v. New York Times Co.*, 485 U.S. 977 (1988). The Supreme Court has developed a two-part test – experience and logic – for determining when the right attaches. *See Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise I*"). Under the experience prong, the court considers whether the document has historically been available to the press and the public. *Id.* The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

The Second Circuit has taken an expansive view of the logic prong, finding that the First Amendment right of access attaches to documents submitted in connection with a criminal proceeding even when "there is no long 'tradition of accessibility.'" *Suarez*, 880 F.2d at 631 (quoting *Press-Enterprise I*, 478 U.S. at 10); *see also United States v. Simone*, 14 F.3d 833, 838

3

(3rd Cir. 1994) (finding a First Amendment right of access to post-trial examination of jury misconduct even though there was no clear history of access or closure).  In *Suarez*, the Second Circuit granted access to forms used for payment of attorneys under the Criminal Justice Act ("CJA").  The court acknowledged that CJA itself was a fairly recent development but held that the First Amendment right of access applied to CJA forms "[b]ecause there is no persuasive reason to ignore the presumption of openness that applies to documents submitted in connection with a criminal proceeding."  *Suarez*, 880 F.2d at 631.  The same rationale applies here, and the First Amendment right attaches to the Letter.

Once the constitutional right is found, a presumption of access arises and that presumption can be overcome only if the court finds that sealing is "necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.  The party seeking sealing must demonstrate on the record that there is a "substantial probability" but that disclosure will cause harm.  *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14 (1986) ("*Press-Enterprise II*").

Here, for the reasons set forth above, there is no "higher value" or compelling interest to justify the sealing.  To the contrary, the important public value at stake is the public's ability to monitor the government agents that operate in the public's name, and disclosure is required under the Constitution.

Accordingly, we respectfully ask the Court to make the Letter publicly available or, in the alternative, to establish a briefing schedule to address the sealing issue.

The Times thanks the Court for its consideration.

Respectfully submitted,

*[signature]*

David E. McCraw

cc: All Counsel of Record (by electronic delivery)